IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **JOHN LEATO** and **LAURINA LEATO**, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 15 C 1469 |
| ) | |
| **ALLIANT CAPITAL MANAGEMENT, LLC**, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Although this action was filed on February 17, 2015, counsel for plaintiffs John Leato ("John") and Laurina Leato ("Laurina") -- collectively referred to for convenience as "Leatos" -- ignored the explicit directive of this District Court's LR 5.2(f) that requires the delivery of a paper copy of the complaint for the assigned judge's use within one business day after filing. Despite the literal one-business-day requirement of LR 5.2(f), this Court always allows a grace period -- typically at least a week[1] -- before it issues a memorandum order that mandates compliance with the LR and imposes a $100 sanction for the earlier noncompliance. In this instance such a memorandum order was sent to Leatos' counsel on February 25, and that order has produced a response on both of its aspects.

Unfortunately, however, the opportunity for this Court to review Leatos' Complaint in consequence of its delivery to chambers has revealed more than one seriously problematic aspect. This sua sponte memorandum opinion and order treats with those problems.

---

[1] That grace period varies somewhat from case to case, the result of this Court's obtaining the Clerk's Office printouts reflecting new case filings only sporadically rather than on a regular (say weekly) basis.

To begin with, the Complaint targets four separate defendants: Alliant Capital Management, LLC ("Alliant"), Diverse Funding Associates, LLC ("Diverse") and Razor Capital, LLC ("Razor"), all sued by John alone, and Real Time Resolutions, Inc. ("Real Time"), sued only by Laurina. By advancing those discrete claims in separate counts, Leatos' counsel is faithful to the procedure permitted by the last sentence of Fed. R. Civ. P. ("Rule") 10(b),[2] but in doing so counsel clearly appears to have run afoul of Rule 20, both as to the joinder of John and Laurina as plaintiffs (Rule 20(a)(1)) and as to the joinder of the four defendants (Rule 20(a)(2)). Each of the four defendants acted separately and independently, so that it cannot be said that Leatos' rights to relief are asserted "with respect to or arising out of the same transaction, occurrence or series of transactions or occurrences" (Rule 20(a)(1)(A) and 20(a)(2)(A)).

What all of this comes down to is that Leatos' counsel has packaged four different lawsuits into a single Complaint, thus paying just a single $400 filing fee when properly filed separate actions would have cost $1,600. Accordingly, unless on or before March 20, 2015 Leatos' counsel files a memorandum supported by appropriate authorities that justify the packaging presented here, this Court will dismiss without prejudice three of those defendants and the counts in which they are named -- Alliant and its Count I or Diverse and its Counts II through IV or Razor and its Count V or Real Time and its Counts VI and VII.[3]

---

[2] In that respect counsel has not engaged in the far more common -- and improper -- conduct of lawyers who file federal lawsuits that emulate state law pleading practice, which employs different counts to set out "causes of action" rather than "claims for relief," a distinction dealt with instructively in NAACP v. Am. Family Mut. Ins. Co., 978 F. 2d 287, 292 (7th Cir. 1992).

[3] Those dismissals will of course be without prejudice to the reassertion of those other claims in separate lawsuits.

What has been dealt with to this point may fairly be characterized as procedural, but the Complaint is highly suspect in substantive terms as well. Each of the four defendants is charged with having "pulled" a consumer report. In that respect Complaint ¶ 7 cites to and quotes from Banga v. First USA, NA, 29 F. Supp. 3d 1270, 1274 n.2 (N.D. Cal. 2014), but the quotation is puzzling both because it is incomplete and because it appears to cut against rather than in favor of Leatos. Here is the entire relevant language from Banga's n.2 ("id." citations omitted):

> Accessing a credit report for "account review" is known as a "soft pull" because it cannot be seen by potential lenders and does not affect a consumer's credit score. By contrast, a "hard pull" involves accessing a credit report for the purpose of issuing new credit or increasing the amount of existing credit. These inquiries can be seen by potential creditors and can impact a consumer's credit score.

In this instance the "pulls" at issue here are clearly not "hard pulls," for they certainly did not access the credit reports "for the purpose of issuing new credit or increasing the amount of existing credit." If then Banga is correct in describing the effect -- or more precisely the lack of effect -- of a "soft pull," just what harm can Leatos legitimately claim? That appears to undercut (if indeed it does not torpedo) Leatos' potential claims of damages, so it is difficult to understand why their counsel even referred to Banga and the distinction that it articulates.

More to the point, however, Leatos' counsel has asserted a bizarre notion of each defendant's "initial communication" with John or Laurina that would assertedly trigger an obligation to provide the notices required by 15 U.S.C. § 1692g(a), as charged in Complaint ¶ 35 as to Alliant, in Complaint ¶ 43 as to Diverse, in Complaint ¶ 49 as to Razor and in Complaint ¶¶ 54 and 56 as to Real Time. As Leatos and their counsel would have it, each defendant's "pull" of John's or Laurina's consumer report from a credit reporting agency somehow constituted a communication with John or Laurina (apparently because John or Laurina learned of the existence of the "pull" after it had taken place). But it is frankly absurd to link Section 1692g (a)

and its required within-five-day notices with a "soft pull" communication that a debt collector has sent only to a credit reporting agency (and not to the debtors themselves) for the sole purpose of obtaining a consumer report as a purely informational matter.[4]

That being so, the March 20, 2015 memorandum earlier ordered to be submitted by Leatos' counsel must also address the substantive problems just discussed. This action is then set for a status hearing at 9 a.m. March 30, 2015 to address the posture of the case in light of counsel's memorandum.

_____
Milton I. Shadur
Senior United States District Judge

Date: March 5, 2015

---

[4] In real world terms, it is entirely understandable (and really unexceptional) for a debt collector, having received assignment of an alleged debt in default, to obtain a copy of the debtor's consumer report to see whether it provides any information that bears on the potential collectibility of that debt. After all, by definition the debt collector was not the original creditor, so that the creditor's assignment of the debt to the debt collector (typically as part of a large group acquired at a discount) might very well have been unaccompanied by a current report as to whether the obligation has been paid or discharged in bankruptcy or is otherwise legally uncollectible or unenforceable. Thus the kind of inquiry described in the Complaint could actually spare a debtor the inconvenience of being plagued by improper collection efforts.